# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| AARON KAPP, individually and as the representative of a class of similarly situated persons,<br><br>        Plaintiff,<br><br>v.<br><br>CULLIGAN INTERNATIONAL COMPANY, EASTERN WISCONSIN WATER CONDITIONING CO., CULLIGAN SOFT WATER SERVICE CO., and UNCO DATA SYSTEMS, INC.<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 19-cv-00355

Hon. Matthew F. Kennelly
Mag. Judge Susan E. Cox

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, Aaron Kapp ("Plaintiff" or "Kapp"), brings this first amended class-action complaint on behalf of himself and a class of similarly-situated persons against defendants Culligan International Company, Eastern Wisconsin Water Conditioning Co., Culligan Soft Water Service Co., and Unco Data Systems, Inc. (collectively, "Defendants" or "Culligan"[1]) for damages and other relief from their practice of initiating, or causing the initiation of, telephone calls using an artificial or prerecorded voice to deliver a message that introduces an advertisement or constitutes telemarketing, without the called party's prior express written consent as required by the Telephone Consumer Protection Act, 47 U.S.C. § 227. Kapp seeks statutory damages and other relief for himself and all other class members. Kapp's allegations are based on information and belief and the investigation of counsel, except those pertaining to his own actions, which are based on personal knowledge.

---

[1]     Hereinafter, "Culligan®" will refer to the Culligan Water brand name.

## INTRODUCTION

1. Kapp seeks class-wide relief against Culligan for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2. Kapp received a prerecorded call from (952) 908-2228 to his residential landline telephone number, without his prior express written consent, asking him to contact his local Culligan dealer at (262) 547-1862 to schedule "required maintenance" on his drinking water system.

3. Culligan initiated, or caused to be initiated, telephone calls using a prerecorded[2] voice for the "dual purpose" of providing information and advertising the availability or quality of goods and services without the prior express written consent of the called party. 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(a).

4. To obtain prior express written consent, telemarketers must tell consumers the telemarketing will be done with a prerecorded voice and that consent is not a condition of purchase. 47 C.F.R. § 64.1200(a), (f)(8)(i).

5. The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation. 47 U.S.C § 227(b)(3). On behalf of himself and all others similarly-situated, Kapp seeks statutory damages for each violation of the TCPA by Culligan.

---

[2] "Prerecorded" messages or calls refer to "artificial or prerecorded voice" messages and calls.

2

6. On behalf of the Class, Kapp also seeks an injunction requiring Culligan to cease all unlawful phone calls, together with costs and attorneys' fees.

<u>PARTIES</u>

7. Plaintiff Aaron Kapp is a natural person, a citizen of the State of Wisconsin, and resides in Wauwatosa, Milwaukee County, Wisconsin.

8. Defendant Culligan International Company ("International") is a Delaware corporation, headquartered at 9399 West Higgins Road, #1100, Rosemont, Illinois and its registered agent is C T Corporation System, 208 South La Salle Street, Suite 814, Chicago, Illinois 60604.

9. Eastern Wisconsin Water Conditioning Co. ("Eastern Wisconsin Water") is a Minnesota corporation, headquartered at 6030 Culligan Way, Minnetonka, Minnesota 55345.

10. Culligan Soft Water Service Co. ("Culligan Soft Water") is a Minnesota corporation, headquartered at 6030 Culligan Way, Minnetonka, Minnesota 55345. Culligan Soft Water sometimes does business under the name "Culligan of Belleville, Illinois" and operates a dealer at 17 Rebel Parkway, Belleville, Illinois 62226.

11. Both Eastern Wisconsin Water and Culligan Soft Water do business under the name "Culligan Water Conditioning of Waukesha, Wisconsin" and operate a dealer at 1801 Pewaukee Road, Waukesha, Wisconsin 53188 (the "Waukesha Dealer"). The phone number for the Waukesha Dealer is (262) 547-1862.

3

12. Both Eastern Wisconsin Water and Culligan Soft Water (collectively "Franchisees") are franchisees of International.

13. Unco Data Systems, Inc. ("Unco") is a Minnesota corporation, headquartered at 6030 Culligan Way, Minnetonka, MN 55345. Unco is a subsidiary of Culligan Soft Water. One of Unco's phone numbers is (952) 908-2228.

14. Unco is a professional software and technology company that provides services such as telephone advertising to the water industry, including Culligan and the Franchisees.

15. As part of its services, Unco transmits phone calls on behalf of International and the Franchisees, including to phone numbers of Illinois residents. Unco leaves prerecorded messages on behalf of International and the Franchisees that provide a call-back number for the local dealer, including dealers located in Illinois.

16. Eastern Wisconsin Water, Culligan Soft Water, and Unco all share common ownership and a CEO by the name of "John Packard."

## JURISDICTION AND VENUE

17. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under the TCPA, a federal statute.

18. Personal jurisdiction exists in Illinois because International is headquartered in Illinois, a substantial portion of conduct took place in Illinois, and Defendants transacted business and made or performed contracts substantially

4

connected with the State, including the franchise agreements between International and the Franchisees discussed herein.

19.     Venue is proper in this District of Illinois because this case was removed to this District from the Cook County Circuit Court pursuant §§ 1441 and 1446, International is headquartered in this District, Defendants have sufficient contacts with this District, and a significant portion of the relevant events took place here.

<u>BACKGROUND AND ENFORCEMENT OF THE TCPA</u>

20.     This case challenges Culligan's practice of initiating, or causing the initiation of, prerecorded telephone calls that include or introduce an advertisement or constitute telemarketing without the prior express written consent of the called party.[3] The written consent to receive such calls must be signed and sufficient to show that the consumer received "clear and conspicuous disclosure" of the consequences of providing the requested consent.[4] To get such consent, telemarketers <u>must</u> also tell consumers the telemarketing will be done with a prerecorded or artificial voice and that consent is not a condition of purchase.[5] Kapp

---

[3]     *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830, 1831, ¶¶1-2, 1839, ¶24 (2012) (*2012 TCPA Order*) ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer—providing permission in writing—to authorize autodialed or prerecorded telemarketing calls...."); 47 C.F.R. § 64.1200(a). *See also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order, 30 F.C.C. Rcd. 7961, 7967, ¶¶4 & 9 (2015) (*2015 TCPA Order*).

[4]     *2012 TCPA Order*, *supra*, at 1844, ¶ 33.

[5]     47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

5

did <u>not</u> give Culligan any prior express written consent to initiate, or cause to be initiated, prerecorded voice messages or calls to his telephone.

21.     The TCPA provides that "[i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is located within the United States —

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
> [...]
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;
>
> (B) to initiate any telephone call to any residential telephone line using a prerecorded or artificial voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the [Federal Communications Commission (FCC)] under paragraph (2)(B).

47 U.S.C. § 227(b)(1).

22.     The TCPA delegates authority to the FCC to ban artificial or prerecorded voice calls, § 227(b)(2)(A), and to exempt particular types of calls from the law's requirements, § 227(b)(2)(B), (C).

23.     The provision referenced in section 227(b)(2)(B) states that the FCC "shall prescribe regulations to implement the requirements of this subsection" and that the agency:

(B) may, by rule or by order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe—

(i) calls that are not made for a commercial purpose; and

(ii) such classes or categories of calls made for commercial purposes as the Commission determines

(I) will not adversely affect the privacy rights that this section is intended to protect; and

(II) do not include the transmission of any unsolicited advertisement.

*Id.* § 227(b)(2)(B).

24. The FCC regulations provide in pertinent part that no person or entity may initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an artificial prerecorded voice, to any cellular or landline telephone with the ***prior express written*** consent of the called party.[6] 47 C.F.R. § 64.1200(a)(2) & (3).

---

[6] "The term advertisement means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).

"The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

"The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

"The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly

7

25.     The FCC explains:

"[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received 'clear and conspicuous disclosure' of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained 'without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.' Finally, should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained."[7]

26.     Culligan was required to comply with the "prior express written consent" rule now in effect by October 16, 2013, even for calls for which Culligan had obtained consent (if any) under the FCC's prior rule.[8]

27.     Culligan's prerecorded telephone calls contained a customer service element by including the reminder to schedule "required maintenance" on a consumer's drinking water system, but were motivated in part by the desire to ultimately offer additional goods or services for sale once the consumer called back to schedule an appointment.

---

or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(8)(i).

[7] *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830, 1831, ¶¶1-2, 1844, ¶ 33 (2012) ("*2012 Order*"). *See also* https://www.fcc.gov/consumers/guides/stop-unwanted-robocalls-and-texts ("Robocalls are calls made with an autodialer or that contain a message with a prerecorded or artificial voice.").

[8] *2015 Order*, *supra*, at 8015, ¶100 ("It follows that the rule applies per call and that telemarketers should not rely on a consumer's written consent obtained before the current rule took effect if that consent does satisfy the current rule.").

28.     The FCC explains:

The so-called "dual purpose" calls described in the record—calls from mortgage brokers to their clients notifying them of lower interest rates, calls from phone companies to customers regarding new calling plans, or calls from credit card companies offering overdraft protection to existing customers—would, in most instances, constitute "unsolicited advertisements," regardless of the customer service element to the call. The Commission explained in the 2002 Notice that such messages may inquire about a customer's satisfaction with a product already purchased, but are motivated in part by the desire to ultimately sell additional goods or services. If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement.[9]

29.     A person or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of … section 227(b) … that are committed by third-party telemarketers." *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574, ¶ 1 (2013) ("*DISH Network*").

30.     Under principles of agency and apparent authority, International and the Franchisees are vicariously liable for the prerecorded telemarketing calls that Unco transmitted to Plaintiff and the proposed Class members.

31.     International and the Franchisees ratified and accepted the benefits of Unco's prerecorded telemarketing calls.

---

[9]     *2003 Order, supra*, at 14097-98, ¶ 142.

9

## FACTS

### A.  Culligan's prerecorded voice phone calls.

32.  Kapp is a homeowner who bought a home with a Culligan® water filtration system already installed.

33.   Soon after purchasing the home, Kapp scheduled a maintenance inspection of his Culligan® water filtration system with the Waukesha Dealer.

34.  As part of the maintenance inspection, the Waukesha Dealer recorded Kapp's phone number into Culligan's records. Kapp did not sign any written agreement with Culligan consenting to receive calls using a prerecorded voice.

35.  Any agreement or document signed by Kapp with Culligan listing his telephone number did **not** contain a "clear and conspicuous" disclosure that: (a) by signing the agreement and providing his telephone number, Kapp consented to receive future calls using a prerecorded voice by or on behalf of Culligan, (b) Kapp agreed unambiguously to receive such calls at his telephone number, and (c) that executing the agreement was not a condition of purchasing Culligan's goods or services.

36.  Kapp received home filtration water service for a few years after purchasing the home, then discontinued the service and had the equipment disposed of.

37.  While Kapp received Culligan's water service, the invoicing, literature, and business cards provided included a generic Culligan® advertisement and did not identify any particular Culligan entity.

10

38.     After Kapp discontinued his water service, Kapp received prerecorded calls to his telephone number. The caller id listed a phone number later discovered to be Unco's, and the prerecorded voice message left the phone number for the Waukesha Dealer.

39.     The prerecorded voice message left on Plaintiff's voicemail on or about July 8, 2018, stated:

> I am calling from Culligan to let you know this is the final reminder to schedule the required maintenance on your drinking water system. Maintenance is critical in extending the life of your system plus provides the high-quality drinking water you have grown to know and trust from Culligan. Please call us as soon as possible to schedule the required maintenance with one of our certified technicians. You can reach our local office at (262) 547-1862. Again, the number is (262) 547-1862. Press star if you would like to listen to this message again. Thank you for trusting Culligan with your water needs.

40.     The message used a robotic sounding voice, there was the lack of a human voice on the line, and the content of the message was generic to indicate that the call was prerecorded.

41.     Unco's prerecorded calls included a message as a "final reminder" to Kapp to schedule "required maintenance" on his drinking water system and asked him to call the Waukesha Dealer to schedule the service.

42.     The telephone number given in the prerecorded voice message was the same number listed on the Waukesha Dealer's invoicing provided when Kapp had received Culligan's drinking water service.

11

43.     The prerecorded calls originated with a phone number for Unco: (952) 908-2228. However, the message left the number for the local Culligan dealer; in Kapp's case, the Waukesha Dealer: (262) 547-1862.

44.     Unco is a technology company that provides services to the water industry. Unco pre-programmed each prerecorded message to leave the contact number for the local Culligan dealer in the called party's geographic area.

45.     The prerecorded message did not include any contact number or option to be removed from the call list.

46.     Kapp received similar, if not identical, telephone calls at the same telephone number in prior years after discontinuing Culligan's filtration water system at his home. On at least one occasion, Kapp called the number in the message and asked to be removed from the call list and was advised that only "corporate" could remove Kapp's number.[10]

47.     After Kapp complained to the number provided in the message and asked to be removed from the call list, Culligan continued to transmit calls to Kapp's landline – including the above-described July 2018 message – using a prerecorded voice to deliver messages with a "final reminder" to schedule "required maintenance" on his drinking water system.

48.     Culligan's unconsented-to prerecorded phone calls damaged Kapp. Kapp lost the use of his telephone while receiving the calls and listening to the

---

[10]     Kapp called the number in the message for the Waukesha Dealer, explained that he no longer had a Culligan water system, and asked to be removed from the call list. The Waukesha Dealer advised that it could not remove Kapp's phone number or stop the calls because it was a "corporate thing."

12

messages, and telephone minutes and voicemail storage while receiving and storing the messages. The calls interrupted Kapp's privacy. Each call wasted his time.

49.     The lack of a live person on the line was frustrating for Kapp, as well as the lack of an option to be removed from the call list even by calling the number provided in the message and speaking with a representative directly, whereby Kapp was placed in a position to receive additional solicitation and advertisement of Culligan goods and services.

50.     Culligan initiated, or caused the initiation of, telephone calls using a prerecorded voice to deliver an advertising or telemarketing message without the requisite prior express written consent of the called party.

51.     Culligan also initiated, or caused the initiation of, prerecorded telephone calls that introduced an advertisement or constituted telemarketing that did not include an opt-out mechanism or provide a toll-free telephone number that permitted Kapp to make a do-not-call request. 47 C.F.R. § 64.1200(b).

## B.     Internacional and the Franchisees' liability for Unco's calls.

52.     International and the Franchisees jointly hired Unco as their agent to implement a program using a prerecorded voice to call phone numbers stored in Culligan's database to deliver a reminder to schedule annual maintenance on Culligan® drinking water systems.

53.     The prerecorded calls were placed from Unco's 952-908-2228 phone number, but the prerecorded messages were programmed to provide the phone number for the local Culligan dealer.

54.     The purpose of Unco's telephone advertising program was to encourage the sale of Culligan's products and services, in particular, Culligan® water filters, which International recommended replacing annually.[11]

55.     Unco, acting in concert with International and the Franchisees, placed the unlawful calls.

56.     International and the Franchisees approved or authorized Unco to promote the Culligan® brand through the use of prerecorded voice calls, and International and the Franchisees had the ability, through their authorization, to oversee the conduct of Unco.

57.     The prerecorded calls were initiated by Unco under International's franchise agreements, which include provisions governing advertising.

58.     Through its franchise agreements, International gave the Franchisees actual or apparent authority to launch a "Culligan" call campaign and to use Unco as a subagent to make the calls.

59.     International and the Franchisees are vicariously liable for Unco's prerecorded calls, jointly benefitted from Unco's prerecorded calls, and ratified Unco's conduct.

60.     Consumers from multiple states, including Illinois, have complained about receiving calls from Unco's 952-908-2228 phone number.[12]

---

[11]     WHEN TO REPLACE WATER FILTERS ON DRINKING WATER FILTRATION SYSTEMS, https://www.culligan.com/home/solution-center/resources/when-to-replace-filters-on-culligan-drinking-water (last visited February 26, 2019).

[12]     Consumers in Arizona and Pennsylvania previously complained of telephone harassment by "Culligan" from the same telephone number, stating, for example,

14

61.    After receiving consumer complaints, knowing that Unco's calls were unlawful, International and the Franchisees continued to accept business flowing from the campaign.

## TCPA CLASS ALLEGATIONS

62.    Kapp brings this action against Culligan for violations of the TCPA on behalf of a nationwide class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

63.    Kapp brings this action against Culligan on behalf of a class of all persons who were called using a prerecorded voice that transmitted an advertising or telemarketing message from Culligan without prior express written consent.

64.    On behalf of himself and a class of others, Kapp seeks statutory damages for each violation of the TCPA, trebling of the statutory damages if the Court determines Culligan's violations were knowing or willful, injunctive relief, and all other relief the Court deems appropriate under the circumstances.

65.    The TCPA class is defined as:

> All persons in the United States (1) who received a prerecorded telephone call or voice message, (2) to schedule maintenance or offer service on a Culligan water system, (3) on or after December 14, 2014, and (4) without prior express written consent.

Kapp anticipates modifying the proposed class definition, including proposing subclasses where appropriate, after discovery about the scope and breadth of the

---

"Message telling me it is time to service filter on my Water Softener which I have not had for over 3 years and they never changed it then," (AZ) and "Culigan reminder to change system. Call local office at (814) 357-8410. I have not used Culligan for many years." (PA).

practice at issue and will do so through either an amended complaint, a motion for class certification, or both.

66. Excluded from the class are Culligan, any entity in which Culligan has a controlling interest, each of their officers or legal representatives, and any Judge assigned to this action, including his or her immediate family.

67. This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23(b)(3).

### Numerosity/impracticality of joinder.

68. On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Kapp, but will be obtained from Culligan's records or the records of third parties.

### Commonality.

69. There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined

16

without reference to the individual circumstances of any class member, include, but are not limited to the following:

    a.    Whether Culligan initiates or causes the initiation of telephone calls using a prerecorded or artificial voice to deliver messages advertising the commercial availability or quality of Culligan's property, goods, or services or for the purpose of encouraging the purchase or rent of, or investment in, Culligan's property, goods or services;

    b.    Whether Culligan obtained prior express written consent initiate or cause the initiation of telephone calls using a prerecorded or artificial voice to deliver messages advertising the commercial availability or quality of Culligan's property, goods, or services or for the purpose of encouraging the purchase or rent of, or investment in, Culligan's property, goods or services;

    c.    Whether Culligan violated the TCPA;

    d.    Whether Kapp and the other members of the Class are entitled to statutory damages under the TCPA;

    e.    Whether Culligan's actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Kapp and the other members of the Class; and

    f.    Whether Kapp and members of the Class are entitled to equitable relief, including but not limited to injunctive relief.

### Adequacy of representation.

70.    Kapp is an adequate representative of the class because his interests do not conflict with the interests of the class he seeks to represent. Kapp is committed to the vigorous prosecution of this action, Kapp has retained counsel competent and experienced in complex TCPA class action litigation, and Kapp intends to vigorously prosecute this action. Kapp and his counsel will fairly and adequately protect the interest of members of the class.

17

## A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.

71.     A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I - VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

72.     Kapp incorporates the preceding paragraphs as though fully set forth herein, and brings Count I individually and on behalf of others similarly situated.

73.     The TCPA prohibits initiating, or causing the initiation of, calls that use a prerecorded or artificial voice to deliver an advertising or telemarketing message without the prior express consent of the called party or an emergency purpose. 47 U.S.C. § 227(b)(1); 47 C.F.R. § 64.1200(a).

74.     Culligan initiated, or caused the initiation of, telephone calls that introduced an advertisement or constituted telemarketing without the prior express written consent of the called party and for no emergency purpose in violation of 47 U.S.C. § 227.

18

75. Culligan's prerecorded telephone calls to Kapp and the other class members included or introduced an advertisement or constituted telemarketing. 47 C.F.R. § 64.1200(a).

76. The nominal purpose of the prerecorded calls was to schedule "required maintenance" on a Culligan water system, but the primary purpose was to advertise and telemarket the commercial availability or quality of Culligan property, goods, or services, and to schedule a visit to the home by a Culligan representative to encourage the purchase of Culligan property, goods, or services.

77. The prerecorded telephone calls were designed to schedule an appointment with a Culligan representative intended to offer Culligan's goods or services for sale upon inspection of the water service and water treatment system.

78. Culligan did not obtain Kapp's prior express written consent to transmit or deliver prerecorded calls.

79. Kapp did not enter into a signed agreement with Culligan that (a) identified Kapp's telephone number and (b) disclosed that agreeing to the recorded messages was not a precondition to purchasing Culligan's goods and services.

80. Kapp called the number referenced in the message and clearly expressed a desire to receive no further calls and be removed from the call list, but he continued to receive the same prerecorded calls.

81. Culligan made the calls without an emergency purpose.

82. The calls did not include a mechanism for Kapp to opt of receiving additional calls or a toll-free phone number to call to be removed from the list.

19

83.     Culligan's violations of the TCPA were knowing and willful. Culligan attempted to disguise the true nature of the calls by delivering a message with a time-sensitive warning as a "final reminder" to schedule "required maintenance" and to call back "as soon as possible." The calls were intended to advertise the commercial availability of Culligan property, goods, or services and to provide the called party with a false sense of urgency to schedule a visit whereby a local Culligan dealer could encourage the purchase of additional Culligan property, goods, or services.

84.     Culligan knowingly and willfully initiated the prerecorded calls without taking obtaining prior express written consent from consumers, written or otherwise.

85.     Culligan knowingly and willfully initiated the calls without providing any function to opt out of the calls.

86.     Kapp and the class seek to recover statutory damages, and, if the Court determines that the violations were knowing or willful, treble damages.

87.     The TCPA provides a private right of action as follows:

3. Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

(A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) Both such actions.

47 U.S.C. § 227(b)(3).

88. Culligan's practice caused actual harm to Kapp and the class, not only because they were subjected to the aggravation that necessarily accompanies telemarketing, but also because such messages or calls use voicemail or answering machine storage capacity and are an intrusion upon privacy and seclusion.[13]

89. Pursuant to 47 U.S.C. § 227(b)(3)(B), Culligan is liable to Kapp for at least $500 per call.

90. If Culligan's actions were knowing or willful, then the Court has the discretion to increase the statutory damages up to three times the amount. 47 U.S.C. § 227(b)(3).

91. Moreover, pursuant to 47 U.S.C. § 227(b)(3)C), if the Court determines that Culligan's conduct was willful or knowing, then Kapp respectfully requests that the Court treble the damages under 47 U.S.C. § 227(b)(3)(C) to $1,500 per call.

92. For these reasons, Kapp and the other class members seek an award of statutory damages ($500), trebling (to $1,500), for each of the subject calls, as provided by to 47 U.S.C. § 227(b)(3)(C).

93. The Court should enjoin Culligan from making future prerecorded message and calls without the prior express written consent of the called party.

---

[13] *2003 Order*, *supra,* at 14096-97, ¶¶ 137-38.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Aaron Kapp, individually and on behalf of all other similarly situated, demands judgment in his favor and against Defendants as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award Plaintiff and all others similarly situated statutory damages;

C.    That the Court award damages of at least $500 per phone call at issue for the underlying TCPA violations pursuant to 47 U.S.C. § 227(b)(3)(B);

D.    That the Court increase the statutory damages to $1,500 per call at issue pursuant to 47 U.S.C. § 227(b)(3)(C);

E.    That the Court award any other relief this Honorable Court deems equitable and just, including injunctive relief; and

F.    That the Court award costs and such further relief as the Court may deem just and proper.

Dated: March 7, 2019

Respectfully submitted,

AARON KAPP, individually and
as the representative of a class of
similarly-situated persons,

/s/ Phillip A. Bock

Ilan Chorowsky
Mark Bulgarelli
Adam Urbanczyk, *Of Counsel*
Progressive Law Group, LLC
1570 Oak Ave. Suite 103
Evanston, IL 60201
Tel: (312) 787-2717
courts@progressivelaw.com

Phillip A. Bock (6224502)
Tod A. Lewis (6256282)
David M. Oppenheim (6278171)
Mara A. Baltabols (6299033)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Tel: (312) 658-5501
service@classlawyers.com

23

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on March 7, 2019, the foregoing was filed using the Court's CM/ECF System which will send notification of such filing to all counsel of record.


/s/ Phillip A. Bock
One of Plaintiff's Attorneys