IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AARON KAPP, individually and as the representative of a class of similarly-situated persons,<br><br>      Plaintiff,<br><br> v.<br><br>EASTERN WISCONSIN WATER CONDITIONING CO. and UNCO DATA SYSTEMS, INC.,<br><br>      Defendants. | No. 20-cv-286<br><br>Hon. William J. Duffin |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, Aaron Kapp ("Plaintiff"), on behalf of himself and a class of similarly-situated persons (the "Settlement Class"), respectfully requests that the Court enter an Order granting final approval to the parties' Settlement Agreement ("Settlement" or the "Agreement"). The parties' proposed Final Approval Order is attached as Exhibit A.

### I. Background.

Plaintiff's Amended Class Action Complaint alleges that Defendants made unsolicited, prerecorded telephone calls to Plaintiff and a class of others in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Specifically, Defendants made (or caused) telephone calls that delivered prerecorded or artificial voice messages to landline phones with the following "final reminder" to schedule the "required maintenance:"

1

> I am calling from Culligan to let you know this is the final reminder to schedule the required maintenance on your drinking water system. Maintenance is critical in extending the life of your system plus provides the high-quality drinking water you have grown to know and trust from Culligan. Please call us as soon as possible to schedule to the required maintenance with one of our certified technicians. You can reach our local office at 262-547-1862. Again, the number is 262-547-1862. Press star if you would like to listen to this message again. Thank you for trusting Culligan with your water needs.

Defendants' message used a robotic sounding voice, there was no human voice on the line, and the contents of the message were generic, all indicating that the message was prerecorded. Defendants did not obtain the prior express written consent of the called parties before making the calls. The message did not include any option to be removed from the call list. Discovery indicated that approximately 51,000 persons received the call at issue.

Defendants raised several defenses to class certification and the merits, including arguing that (1) the calls were made to both current and former customers; (2) some of the call recipients allegedly provided some form of consent for the calls; (3) some of the calls were made to cellular phones, not residential landline phones; and (4) that individualized inquiries would need to be undertaken to determine whether the numbers called were residential or business numbers.

The Settlement Agreement resolves all the Class's claims for a payment of $525,000.00. The proposed Settlement Agreement is the result of arm's-length negotiations over several months by the parties and their counsel.

The Court preliminarily approved the proposed settlement on August 23, 2022, after considering Plaintiff's *Unopposed Motion for Preliminary Approval of Class*

*Action Settlement and Notice to the Class* and brief in support. (Doc. 140). The Court entered an *Order Preliminarily Approving Class Action Settlement* (Doc. 141) ("Preliminary Approval Order"). In accordance with the Preliminary Approval Order, Class-settlement.com, the appointed Settlement Administrator (the "Settlement Administrator"), sent the class notice by U.S. First Class mail, and by e-mail to class members who could not be reached by mail but for whom an e-mail address was available, to the 51,074 unique members on the Class List. Declaration of Dorothy Sue Merryman, Exhibit B. After the notice was sent, no class member objected to the settlement and just 6 requested exclusion. *Id*. Thus, the class members support approval of the proposed settlement.

## II. Summary of the Settlement.

The key terms of the Settlement are as follows:

(a) Class Certification. Pursuant to Rule 23(b)(3), by stipulation of the parties, and solely for the purpose of settlement, the Court preliminarily certified the following settlement class:

> All persons in the United States with a cellular phone or residential landline who received a prerecorded telephone call or voice message from the defendants: (1) between December 14, 2014, and January 1, 2019; (2) related to maintenance or service on a Culligan® water system and (3) without prior express written consent.

Preliminary Approval Order at 2. The Settlement Class excludes: (1) Defendants, any parent, subsidiary, affiliate, or controlled person of either Defendant, as well as their attorneys, officers, directors, agents, servants, or employees, and the immediate family members of such persons; (2) the named

3

counsel in the Action and employees of their offices or firms; and (3) the judge(s) assigned to the Action and his or her staff. *Id.*

The Court appointed Plaintiff as the "Class Representative" and appointed Plaintiff's attorneys, Phillip A. Bock and David M. Oppenheim of Bock Hatch & Oppenheim, LLC and Ilan Chorowsky of Progressive Law Group, LLC, as "Class Counsel." *Id.* at 3.

(b) <u>The Settlement Fund</u>. Defendants agreed to make available a settlement fund of $525,000 (the "Settlement Fund") to pay class member claims, to pay an incentive payment to the Class Representative, and to pay attorneys' fees and expenses to Class Counsel. Any portion of the Settlement Fund that is not claimed will revert to and be kept by Defendants. Settlement Agreement, Doc. 140-1, ¶ 5.

(c) <u>Monetary Relief to the Settlement Class</u>. Each class member (including Plaintiff) who submits an approved claim form will be mailed a check for their *pro rata* share of the Settlement Fund net of approved other payments (*i.e.,* attorney's fees and expenses, settlement administration costs, and service award). *Id.*, ¶¶ 8-9. As of the time of the settlement administrator's declaration, there were 3,664 confirmed claims. If the other amounts sought are awarded and there are no additional approved claims, each claimant will receive approximately $56.

To make a successful claim, a person did not need any telephone records showing calls from Defendants, did not need to remember receiving any call

4

from Defendants, and did not need to know anything about Defendants. Rather, the claimant must merely identify himself/herself/itself as a member of the Settlement Class by verifying ownership or use of one or more targeted telephone numbers during the class period. *Id.* and Exhibit 2 thereto.

(d)  Class Notice. Pursuant to the terms of the Preliminary Approval Order, the Settlement Administrator caused the approved Class Notice to be sent to the Settlement Class by mail and by e-mail. Exhibit B, ¶¶ 4-16. The Settlement Administrator's fee is $123,785. Quote, Exhibit C.

(e)  Class Members' Right to Opt Out or Object. Class members were notified about their right to object to the settlement or exclude themselves from it by November 7, 2022. *Id*, Ex. 1 thereto. No class member objected and only six opted out. Exhibit B, ¶ 19.

(f)  Class Representative Incentive Award and Attorney's Fees and Expenses. As agreed by Defendants, Class Counsel requests that the Court award $15,000 to Plaintiff for his services as the class representative. Furthermore, as agreed by Defendants, Class Counsel requests that the Court award them attorney's fees equal to one-third of the Settlement Fund ($175,000), plus reasonable out-of-pocket expenses of $5,656.35 plus the expenses incurred in attending the final approval hearing. Agreement, ¶ 17. *See* Class Counsel Expenses, Doc. 140-3.

5

(g) <u>Release</u>. If the Court finally approves the proposed settlement after notice, the Settlement Class will release all claims about the specific calls described in the class definition. Agreement, ¶ 15(a).

### III. The Settlement Class Was Notified about the Settlement.

Rule 23 (e)(1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the way notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Here, in compliance with the Court's Preliminary Approval Order (Doc. 141), the Settlement Administrator caused the approved class notice to be sent to the class members by both U.S. mail and e-mail. <u>Exhibit B</u>, ¶¶ 4-16.

The content of the parties' notice complied with Rule 23 (c)(2)(B), which requires that the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." The class notice stated all those things. <u>Exhibit B</u>, Ex. 1.

6

Further, the claim form for the settlement was a 1-page, easy to read and understand form. *Id.* The Settlement Class members did not have to provide a copy of telephone records or remember receiving a call. Instead, to claim a monetary payment they merely needed to identify themselves as members of the class by stating their ownership or use of one or more of the subject telephone numbers at the time of the calls.

### IV. The Court Should Finally Approve the Settlement.

#### A. Class Certification is Still Appropriate.

In preliminarily approving the settlement, this Court ruled that class certification is appropriate. (Doc. 79 at ¶ 2). The absent Settlement Class Members were alerted that this Court certified a settlement class, and there has been no objection. <u>Exhibit B.</u> As a result, class certification is still appropriate in that (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the class that predominate over any questions affecting only individual class members; (c) Plaintiff's claims are typical of the claims of the class; (d) Plaintiff and his attorneys will fairly and adequately protect the interests of the class; and (e) a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

#### B. Standard for Judicial Evaluation and Approval.

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Technology +*

7

*Telecom.*, 309 F.3d 978, 986 (7th Cir. 2002). It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

"[A] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995). *See also Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972) ("The law actively encourages compromise and settlement of disputes.")

### C. Factors To Be Considered in Determining Whether a Settlement Is Fair, Reasonable, and Adequate.

Courts typically consider the following factors in evaluating a class action settlement: (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby*, 75 F.3d at 1198-1199. Here, these factors show the settlement should be approved.

New Federal Rule 23 (e)(2), which took effect December 1, 2018, enumerates similar factors: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief

8

provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Here, all these factors also show the settlement should be approved.

### 1. The strength of the Plaintiff's case on the merits compared to the amount of the settlement.

In evaluating a proposed settlement, a court recognizes that the "essence of settlement is compromise" and will not represent a total win for either side. *Isby*, 75 F.3d at 1200, *quoting Armstrong v. Board of Sch. Dir.,* 616 F.2d 305, 315 (7th Cir. 1980). The court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D. N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998); *E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985).

Here, Defendants raise defenses to both class certification and the merits of the claims. To extract a recovery for the Class, Plaintiff would have to go to trial and obtain a judgment. Then, Plaintiff would have to attempt to collect against Defendant's parent company. If unsuccessful, the Class would likely recover nothing. By settling this matter, the parties avoid the expense of trial and uncertainty of

outcome. If this matter proceeded to trial, the net value of the recovery could be further decreased due to the costs of compelling further discovery, retaining expert witnesses, preparing for trial and, possibly, engaging in post-trial matters, including the lodging of an appeal.

### 2. Defendant's ability to pay is limited, driving this settlement.

Defendants' ability to pay a greater settlement or judgment is questionable at best. Defendants are small, privately-held companies that serve as a franchisee and contractor of the larger Culligan Water Technologies, Inc., which initially was a defendant in this action but voluntarily dismissed after discovery established that it had no involvement in the calls at issue. Therefore, the Settlement is not only fair, adequate, and reasonable for all involved, but also an outstanding result for the Class.

### 3. The likely complexity, length,s and expense of further litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). This case is no exception. Litigation through trial would be complex, costly, and lengthy. By reaching a favorable settlement prior to trial, Plaintiff and the Class avoid significant expense and delay, and instead ensure a significant and early recovery for the Class members. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Fitzsimmons*, 778 F.2d at 309. Although Plaintiff believes his case is strong, it is subject to considerable

delay, risks, and costs if the case is not settled. The years of additional litigation would unnecessarily increase both the expense of the litigation and the risk for Class members. *Isby,* 75 F.3d at 1199; *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000).

As to delay, continued litigation also carries with it a decrease in the time value of money; "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The Settlement Agreement, on the other hand, provides substantial immediate benefits.

Because of the significant costs that class actions can involve for both parties, courts consider the savings that would result from settlement of the case. *Isby*, 75 F. 3d at 1198-99 (holding that settlement was outcome "comparable if not far superior," to that which the Plaintiffs might achieve at trial because continuous litigation would require "resolution of many difficult and complex issues, and would entail considerable additional expense") (quoting *Tafia v. Bayh*, 746 F. Supp. 723, 727 (N.D. Ind. 1994)).

### 4. **No class member opposes the settlement.**

No class member has filed an objected to the settlement and only six have opted out. Doc. 80. A low rate of opt-outs or opposition reflect favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high

11

acceptance rate "is strong circumstantial evidence in favor of the settlements"). Thus, the class members overwhelmingly support the settlement. *See Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement); *Schlensky v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978); *In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990); *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 163, 175 (S.D.N.Y. 2000) (a small number of objectors is "indicative of the adequacy of the settlement"); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) ("small number of objectors is a good indication of the fairness of the settlement"). The lack of opposition shows a favorable reaction to the settlement that supports final approval.

### 5. Absence of collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.). There is no evidence or indicia of collusion here. Plaintiff and its counsel have concluded that the terms and conditions provided for in this Agreement are fair, reasonable, adequate, and in the best interests of the Settlement Class as a means of resolving this litigation.

6.  **Opinion of counsel.**

Plaintiff and his counsel concluded that the terms and conditions provided for in this Agreement are fair, reasonable, adequate, and in the best interests of the Class as a means of resolving this litigation. Plaintiff's counsel have substantial experience litigating class actions in general and TCPA claims specifically. They have been appointed class counsel in dozens of cases. *See* Firm Resume, Doc. 140-2. Under these circumstances, the Court should give weight to Class Counsel's opinions about the settlement.

7.  **Stage of proceedings and amount of discovery.**

This case is sufficiently advanced for the parties to be able to appreciate the strengths and weaknesses of their respective cases and of factors such as Defendants' ability to pay a settlement or judgment. Plaintiff was able to identify some of the class members through discovery and identify the circumstances surrounding the subject calling campaign. As a result, the parties have compiled necessary discovery, and exchanged documents and data sufficient for Plaintiff and its attorneys to evaluate the strength of this case.

8.  **Public interest.**

Courts have held that a settlement of class action litigation serves the public interest. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980). Here, some class members chose to claim a monetary award, while the others—those who did not opt out—chose to stay in the class and enjoy the prospective relief of not receiving future prerecorded soliciting calls. Based upon the foregoing, as well as upon the

13

judgment of experienced class counsel, Plaintiff requests that the Court approve the proposed settlement.

## V. The Attorneys' Fees and Expenses are Reasonable and Appropriate.

As discussed in the preliminary approval brief, Defendants have agreed to pay one third of the Settlement Fund ($175,000) to Class Counsel as attorney's fees, plus out-of-pocket expenses of $5,656.35. The settlement notice informed the class members about the parties' agreement on attorneys' fees and expenses, and no class member complained or objected. Exhibit B. Courts recognize the lack of objection from the class as an important factor in awarding fees. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, *4 (E.D. Pa. Jan. 3, 2008) ("A lack of objections demonstrate that the Class views the settlement as a success and finds the request for counsel fees to be reasonable.").

It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill*, 160 F.3d at 363 (7th Cir. 1998) (affirming award of 38% of $20 million), and citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

The U.S. Supreme Court has noted that in settlement fund cases, such as this one, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). In *Boeing,* 444 U.S. at 480, the Supreme Court stated that the right of absentee class members "to share the harvest

14

of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *See also US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1545 (2013) (discussing *Boeing* rule and describing it as one "designed to prevent freeloading").

"[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump–sum judgment recovered on his behalf." *Boeing*, 444 U.S. at 479. Here, as in *Boeing*, the class members were sent a class notice and claim form that enabled them "to share the harvest of the lawsuit upon proof of their identity." By identifying themself as an owner or user of one or more of the targeted telephone numbers when the calls were made, they would receive a check for their *pro rata* share of the Settlement Fund without any need to prove up their claim, and without needing to possess or remember receiving any call from Defendants.

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the U.S. Supreme Court held that negotiated, agreed-upon attorneys' fee provisions, such as the one here, are the "ideal" towards which the parties should strive: "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the court concluded that courts should not interfere in fee arrangements between settling class action parties when the defendant has agreed to pay the fees:

> [W]here . . . the amount of the fees is important to the party paying them, as well as the attorney recipient, its seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want

15

> to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the courts for determination after the settlement. [761 F.2d at 905 n. 5].

As discussed previously, Class Counsel undertook this case on a contingency basis and achieved an excellent result for the Class. Class Counsel have been litigating TCPA class actions since 2003, and have litigated other types of class actions for many more years. Doc. 140-2. In this case, they were able to apply their unique capabilities to achieve an excellent result in a fair and efficient manner. They always faced risk of nonpayment, not only for their time but also for their out-of-pocket costs. The Court should approve Defendants' agreement to pay Class Counsel the agreed fees of $175,000—one third of the Settlement Fund— plus reimbursement of expenses incurred in this action, as detailed in Doc. 140-3 because those amounts are within the market rate for this type of case and it is otherwise fair and reasonable under the circumstances.

### VI. The Agreed Service/Incentive Award to Plaintiff is Appropriate.

Likewise, as discussed in the preliminary approval motion, the Court should approve Defendants' agreement to pay $15,000 to Plaintiff as a service or incentive award for serving as the class representative. Nobody objected to that request. As noted previously, this request is consistent with awards in other cases.

Class action suits conserve judicial and litigant resources. *GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486, 497, *citing* C. Krislov, SCRUTINY OF THE BOUNTY: INCENTIVE AWARDS FOR PLAINTIFFS IN CLASS LITIGATION, 78 Ill. B.J. 286 (June 1990). Class representatives assume the burdens of litigation that absent class members do

16

not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. A plaintiff willing and able to represent the entire class and devote time and attention to the case is crucial for a class action to proceed and for the class to receive anything.

Here, Plaintiff was the catalyst for bringing the action. Plaintiff's efforts benefited the Settlement Class. But for Plaintiff's initiative and participation, and willingness to subject itself to public scrutiny for attempting to enforce the TCPA, the benefits made available to all class members would not have been possible. The Court should approve the parties' agreement regarding Plaintiff's incentive payment, and award the requested amount.

## VII. Conclusion.

WHEREFORE, Plaintiff, Aaron Kapp, respectfully requests that the Court approve the parties' Settlement Agreement and enter the proposed *Final Approval Order*, which was attached as Exhibit 3 to the Settlement Agreement and is submitted herewith as Exhibit A.

Respectfully submitted,

AARON KAPP, individually and as the representative of a class of similarly-situated persons,

By: s/ David M. Oppenheim
    One of their attorneys

Phillip A. Bock
David M. Oppenheim
Bock Hatch & Oppenheim LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
Telephone: 312-658-5500

Ilan J. Chorowsky
Progressive Law Group LLC
1570 Oak Ave
Evanston, IL 60201

18

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on December 13, 2022, he caused a copy of the foregoing to be served on all counsel of record via the Court's ECF system.

/s/ David M. Oppenheim
One of Plaintiff's attorneys